JUL 6 2026 PM 1:43
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXANDRIA BROCK,

        Plaintiff,

v.

Case No.: 8:26-CV-1927-WFJ-SPF

WATKINS REALTY SERVICES, LLC,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Alexandria Brock ("Plaintiff"), proceeding pro se, sues Defendant, Watkins Realty

Services, LLC ("Watkins" or "Defendant"), and alleges as follows:

**I. PRELIMINARY STATEMENT**

1.    This is an action for damages and equitable relief arising from Defendant's unlawful

discrimination against Plaintiff on the basis of race and disability, Defendant's failure to

provide Plaintiff a reasonable accommodation for her disability, and Defendant's

retaliation against Plaintiff for engaging in activity protected under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Americans

with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); and the

Florida Civil Rights Act of 1992, as amended, §§ 760.01–760.11, Fla. Stat. ("FCRA").

2.    No court or other neutral adjudicative body applying the correct legal standard has yet

evaluated the merits of Plaintiff's claims. The Florida Commission on Human Relations'

"No Cause" determination, issued December 3, 2025, and the U.S. Equal Employment

Opportunity Commission's ("EEOC") subsequent Notice of Right to Sue, issued April 8,

I.F.P.

1

2026, are procedural determinations that permit but do not resolve this civil action. The EEOC's Notice of Right to Sue expressly states that the EEOC accorded "substantial weight" to the state agency's determination pursuant to 29 C.F.R. § 1601.76; it does not reflect an independent EEOC investigation or finding on the merits of Plaintiff's claims.

## II. JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over Plaintiff's Title VII and ADA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States.

4.    This Court has supplemental jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy as Plaintiff's federal claims and derive from a common nucleus of operative fact.

5.    Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Hillsborough and Pasco Counties, Florida, both within the Tampa Division of the Middle District of Florida, and because Defendant regularly conducts business and maintains a place of business within this Division.

## III. PARTIES

6.    Plaintiff, Alexandria Brock, resided in Pasco County, Florida during the period of her employment with Defendant and the events giving rise to this action. At all times material to this action, Plaintiff was an "employee" of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f); the ADA, 42 U.S.C. § 12111(4); and the FCRA, § 760.02(10), Fla. Stat.

2

7. Defendant, Watkins Realty Services, LLC, is, upon information and belief, a Florida limited liability company with its principal place of business at 3802 Ehrlich Road, Tampa, Florida 33624. At all times material to this action, Defendant was Plaintiff's "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b); the ADA, 42 U.S.C. § 12111(5); and the FCRA, § 760.02(7), Fla. Stat., in that Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, as Defendant itself has represented in written submissions to the Florida Commission on Human Relations.

## IV. ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

8. On or about June 6, 2025, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR"), dual-filed with the EEOC, assigned FCHR Case No. 2025113528 and EEOC Charge No. 15D-2025-01084, alleging discrimination on the basis of race and disability and retaliation in violation of the FCRA and, by cross-reference, Title VII and the ADA.

9. On or about December 3, 2025, the FCHR issued a Determination: No Reasonable Cause as to Plaintiff's charge. That determination contains no analysis of Plaintiff's prima facie case, no identification of Defendant's asserted legitimate non-discriminatory or non-retaliatory reasons, and no evaluation of whether any such reasons were pretextual. Plaintiff disputes the correctness and adequacy of that determination, which does not constitute a decision on the merits and is not entitled to preclusive effect in this action.

10. On April 8, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to EEOC Charge No. 15D-2025-01084, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

3

11. Plaintiff received the Notice of Right to Sue on April 8, 2026. This action is commenced within ninety (90) days of that receipt, in compliance with 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 12117(a).

12. Plaintiff has exhausted all administrative remedies and satisfied all conditions precedent to the filing of this action as to Defendant Watkins Realty Services, LLC.

## V. FACTUAL BACKGROUND

### A. Plaintiff's Employment, Protected Characteristics, and Disability

13. Defendant hired Plaintiff on or about August 31, 2023, as a Property Manager/Community Manager assigned to Agora at Port Richey, a residential community managed by Defendant, at an annual salary of $59,700.00.

14. Plaintiff is Black/African-American and was, at all times material to this action, the only Black property manager within her department at Watkins.

15. Plaintiff has been diagnosed with Post-Traumatic Stress Disorder ("PTSD"), Adjustment Disorder with mixed anxiety and depressed mood, and depression. These impairments substantially limit one or more of Plaintiff's major life activities, including sleeping, concentrating, and neurological and brain functions within the meaning of 29 C.F.R. § 1630.2(i). Plaintiff is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102, and the FCRA.

16. Beginning no later than June 2024, Plaintiff disclosed her medical conditions to her then-Regional Manager, Charles "Chaz" Shipp, and to Alicia Cooper, Defendant's Vice President of Operations and Human Resources. Throughout the remainder of 2024, Plaintiff provided Defendant's management, including Ms. Cooper, ongoing updates

4

regarding her medical treatment, including documented episodes of hemorrhaging and dangerously low iron levels requiring infusion therapy.

## B. Mr. Shipp's Undisturbed Ownership of a Third-Party Entity During His Employment with Defendant

17. Sail Consulting Florida LLC ("Sail") is a Florida limited liability company formed on November 21, 2022, by Charles N. Shipp, who has been listed as its sole Owner of record continuously since formation through the present. Plaintiff played no role in Sail's formation, holds no ownership interest in Sail, and has never been listed as an owner of Sail.

18. Upon information and belief, and based on the anticipated testimony of Charles Shipp, Mr. Shipp owned Sail throughout the entirety of his subsequent employment with Defendant as Regional Manager, a fact known to Defendant's management, including Alicia Cooper and Erika Davenport, during that employment. Defendant took no adverse employment action against Mr. Shipp on account of his ownership of Sail, did not require him to sign a non-compete agreement on account of it, and did not threaten him with termination on account of it.

19. Defendant's own Position Statement, submitted to the Florida Commission on Human Relations on July 1, 2025, describes a meeting held on March 25, 2025 concerning the planning and operations of "Sail Management," and identifies Mr. Shipp as a participant in that meeting.

20. Mr. Shipp was informed by Erika Davenport on March 31, 2025 that his employment would be terminated, following his submission of a 30-day notice of resignation, and was officially terminated on April 1, 2025. Mr. Shipp therefore remained an active employee

5

of Defendant on March 25, 2025, the date of the meeting described in the preceding paragraph.

### C. Plaintiff's Brief, Non-Ownership Listing with Sail and Defendant's Disparate Response

21. At the request of an outside investor involved with Sail, Plaintiff was listed as a non-ownership "Principal" of Sail in an Amended Annual Report filed with the Florida Department of State, Division of Corporations, on April 4, 2025. Plaintiff held no ownership interest, made no capital contribution, and exercised no managerial authority with respect to Sail at any time.

22. On April 8, 2025, Sail filed a further Amended Annual Report continuing to list Plaintiff as a non-ownership Principal.

23. On or about April 11, 2025, upon any suggestion that this brief, non-ownership listing created an appearance of conflict with her employment at Watkins, Plaintiff requested that her name be removed from Sail's corporate filings. Sail filed an Amended Annual Report removing Plaintiff as a listed Principal that same day. In total, Plaintiff was listed as a non-ownership Principal of Sail for approximately seven (7) days.

24. On or about April 11, 2025, Alicia Cooper and Erika Davenport summoned Plaintiff to Defendant's corporate office and threatened her with termination of employment unless she appeared in person and signed a retroactive non-compete agreement. During this confrontation, Plaintiff was accused of disloyalty, called a liar, and told she could not be trusted.

25. Defendant's response to Plaintiff's brief, non-ownership, promptly-corrected listing with Sail stands in stark contrast to Defendant's treatment of Mr. Shipp, a similarly situated male employee outside Plaintiff's protected class, who owned Sail outright throughout his

employment with Defendant, with Defendant's knowledge, and who was never confronted, never accused of disloyalty, never asked to sign a non-compete agreement, and never threatened with termination on that basis.

26. On April 13, 2025, Plaintiff was hospitalized for hemorrhaging and severe panic attacks.

27. On April 14, 2025, the same day Plaintiff submitted medical documentation to Defendant, Defendant posted Plaintiff's position publicly online and offered it to other employees, and revoked Plaintiff's access to Defendant's resident-management software (Entrata) and related systems.

28. On or about April 17, 2025, Defendant convened a meeting of multiple managers regarding company-wide non-compete agreements. At that meeting, certain managers with known outside business interests were excused from any requirement to sign a non-compete agreement and faced no consequence for declining to do so. Plaintiff, whose name had already been removed from Sail's corporate records six days earlier, on April 11, 2025, was not extended the same treatment and remained subject to the termination threat issued to her on April 11, 2025.

29. On April 29, 2025, TriNet HR III, Inc., Defendant's professional employer organization, issued Plaintiff a formal Notice of Eligibility stating that Plaintiff was ineligible for leave under the Family and Medical Leave Act because Defendant did not employ fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite.

30. On May 30, 2025, Defendant terminated Plaintiff's employee benefits.

**D. Comparator Evidence of Disparate Treatment**

31. Defendant permitted Steve Tipton, a Caucasian maintenance employee who reported to Plaintiff, to make repeated partial rental payments without consequence to his employee

housing discount, while Plaintiff's own employee housing discount was revoked following a single partial payment made during a documented medical crisis.

32. Defendant permitted a Caucasian manager, upon information and belief known to Plaintiff as "Jen," to work remotely, to be absent from work for approximately three weeks without consequence, and to receive a raise and promotion exceeding the standard increase given to other employees, including Plaintiff — notwithstanding Plaintiff's achievement, during the relevant period, of full occupancy at Agora at Port Richey, a milestone not previously achieved at that property.

33. Defendant permitted a Caucasian porter, upon information and belief known to Plaintiff as "Isaac," to take intermittent medical leave with the direct assistance of Defendant's human resources department, while categorically prohibiting Plaintiff from performing any work-related activity whatsoever during her own medical leave.

34. Defendant required Plaintiff, and Plaintiff alone among comparable managers, to maintain weekend operating hours at her assigned property and to attend mandatory in-person ownership meetings without exception for illness, while permitting comparably situated managers at other Defendant-managed properties to remain closed on weekends and to be excused from such meetings.

## E. Plaintiff's October 2025 Request for Accommodation and Defendant's Termination of Her Employment

35. On October 2, 2025, Plaintiff notified Erika Davenport and Alicia Cooper that she had been medically released to return to work on October 8, 2025, but requested that her position be protected pending final clearance from her treating providers in light of

8

additional scheduled medical appointments, as a reasonable accommodation for her disability.

36. On October 6, 2025, Ms. Cooper directed Plaintiff to communicate exclusively through Defendant's outside counsel, Fisher & Phillips LLP.

37. Between October 6 and October 7, 2025, Plaintiff provided Defendant, through counsel, updated medical documentation supporting her accommodation request and confirmed her willingness and ability to return to work consistent with her treating providers' restrictions.

38. On October 8, 2025, counsel for Defendant informed Plaintiff in writing that Defendant was "proceeding with separation" of her employment, citing that her position had already been filled, that accommodating her request would impose an undue hardship on Defendant as a small business, and unspecified concerns regarding Plaintiff's conduct.

39. Defendant's October 8, 2025 termination decision was communicated six (6) days after Plaintiff's October 2, 2025 request for continued accommodation, and fewer than five (5) months after Plaintiff filed her Charge of Discrimination on June 6, 2025.

40. At no point did Defendant engage with Plaintiff in a good-faith interactive process to determine whether a reasonable accommodation — including, without limitation, a brief extension of leave, a modified schedule, or temporary remote work — could be provided without undue hardship, as required by 42 U.S.C. § 12112(b)(5)(A).

41. As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered lost wages and employment benefits, emotional distress, humiliation, and other compensable damages.

9

## COUNT I — RACE DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2(a)

42.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

43.    Plaintiff is a member of a class protected under Title VII based on her race (Black/African-American).

44.    Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to disparate scheduling requirements, denial of equal pay and bonus opportunities, disparate and selective enforcement of Defendant's non-compete policy, revocation of employee benefits, and ultimate termination of employment.

45.    Plaintiff was qualified for her position, as demonstrated by her tenure of employment and her achievement of full occupancy at Agora at Port Richey.

46.    Similarly situated employees outside Plaintiff's protected class, including but not limited to Steve Tipton, the manager identified as "Jen," and Charles Shipp, were treated more favorably than Plaintiff under comparable circumstances.

47.    Any legitimate, non-discriminatory reason offered by Defendant for its adverse actions against Plaintiff is pretextual and not the true reason for those actions.

48.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensable harm.

## COUNT II — RACE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, § 760.10(1)(a), FLA. STAT.

49.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

50.    Plaintiff realleges Count I as though fully set forth herein, as Florida courts construe the FCRA's discrimination provisions consistent with Title VII. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

51.    Defendant's conduct described above constitutes unlawful discrimination on the basis of race in violation of § 760.10(1)(a), Fla. Stat.

52.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer damages recoverable under § 760.11(5), Fla. Stat., including back pay, front pay, compensatory damages for mental anguish and loss of dignity, and other intangible injuries.

## COUNT III — DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA, 42 U.S.C. § 12112(a)

53.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

54.    Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102, in that she has a physical or mental impairment that substantially limits one or more major life activities.

55.    Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

56.    Defendant subjected Plaintiff to adverse employment actions, culminating in termination of her employment, because of her disability.

57. Any legitimate, non-discriminatory reason offered by Defendant is pretextual and not the true reason for Defendant's actions.

58. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensable harm.

## COUNT IV — DISABILITY DISCRIMINATION IN VIOLATION OF THE FCRA, § 760.10(1)(a), FLA. STAT.

59. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

60. Plaintiff realleges Count III as though fully set forth herein, as Florida courts construe the FCRA's disability discrimination provisions consistent with the ADA.

61. Defendant's conduct described above constitutes unlawful discrimination on the basis of disability in violation of § 760.10(1)(a), Fla. Stat.

62. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages recoverable under § 760.11(5), Fla. Stat.

## COUNT V — FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA, 42 U.S.C. § 12112(b)(5)(A)

63. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

64. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

65. Plaintiff requested a reasonable accommodation for her disability, including but not limited to continued job protection pending final medical clearance.

66. Defendant failed to engage in a good-faith interactive process with Plaintiff to identify a reasonable accommodation, as required by 42 U.S.C. § 12112(b)(5)(A) and 29 C.F.R. § 1630.2(o)(3).

67. A reasonable accommodation, including a brief extension of leave, a modified schedule, or temporary remote work, was available and would not have imposed an undue hardship on Defendant's operations.

68. Defendant denied Plaintiff's request for accommodation and instead terminated her employment.

69. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensable harm.

## COUNT VI — FAILURE TO ACCOMMODATE IN VIOLATION OF THE FCRA, § 760.10(1)(a), FLA. STAT.

70. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

71. Plaintiff realleges Count V as though fully set forth herein, as Florida courts construe the FCRA's disability accommodation provisions consistent with the ADA.

72. Defendant's failure to accommodate Plaintiff's disability, as described above, constitutes unlawful discrimination in violation of § 760.10(1)(a), Fla. Stat.

73. As a direct and proximate result, Plaintiff has suffered damages recoverable under § 760.11(5), Fla. Stat.

## COUNT VII — RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3(a)

74. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

75. Plaintiff engaged in statutorily protected activity, including filing a Charge of Discrimination on June 6, 2025, and requesting accommodation and raising concerns of discriminatory and retaliatory treatment throughout her employment.

76. Plaintiff suffered materially adverse employment actions, including but not limited to the April 2025 revocation of benefits and system access and the October 8, 2025 termination of her employment.

77. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as demonstrated by the close temporal proximity between Plaintiff's October 2, 2025 accommodation request and Defendant's October 8, 2025 termination decision — a period of six (6) days — and by the temporal proximity between Plaintiff's charge-filing activity and Defendant's subsequent adverse actions.

78. Any legitimate, non-retaliatory reason offered by Defendant is pretextual and not the true reason for Defendant's actions.

79. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensable harm.

## COUNT VIII — RETALIATION IN VIOLATION OF THE ADA, 42 U.S.C. § 12203(a)

80. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

14

81.    Plaintiff engaged in activity protected under the ADA, including requesting reasonable accommodation for her disability and opposing what she reasonably believed to be disability discrimination.

82.    Plaintiff suffered materially adverse employment actions following her protected activity, culminating in the termination of her employment on October 8, 2025, six (6) days after her October 2, 2025 accommodation request.

83.    A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions.

84.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, and other compensable harm.

## COUNT IX — RETALIATION IN VIOLATION OF THE FCRA, § 760.10(7), FLA. STAT.

85.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

86.    Plaintiff realleges Counts VII and VIII as though fully set forth herein, as Florida courts construe the FCRA's retaliation provision consistent with Title VII and the ADA. Village of Tequesta v. Luscavich, 240 So. 3d 733 (Fla. 4th DCA 2018).

87.    Defendant's retaliatory conduct described above violates § 760.10(7), Fla. Stat.

88.    As a direct and proximate result, Plaintiff has suffered damages recoverable under § 760.11(5), Fla. Stat.

## PRAYER FOR RELIEF

15

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award the following relief:

(a).    Back pay, including lost wages and benefits, in an amount to be determined at trial;

(b).    Front pay, or reinstatement to Plaintiff's former or an equivalent position, in an amount and form to be determined at trial;

(c).    Compensatory damages, including but not limited to damages for emotional distress, mental anguish, loss of dignity, and other intangible injuries, in an amount to be determined at trial, subject to the statutory caps set forth in 42 U.S.C. § 1981a(b)(3) for the Title VII and ADA claims;

(d).    Punitive damages to the extent permitted under 42 U.S.C. § 1981a and § 760.11(5), Fla. Stat.;

(e).    Pre-judgment and post-judgment interest as permitted by law;

(f).    Reasonable attorney's fees and costs to the extent Plaintiff retains counsel or as otherwise permitted by 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and § 760.11(5), Fla. Stat.;

(g).    Injunctive relief prohibiting further discriminatory or retaliatory conduct and requiring correction of Plaintiff's personnel records; and

(h).    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this _6th_ day of July, 2026.

16

Alexandria L. Brock

Alexandria Brock, Pro Se

4934 Main St

New Port Richey, FL 34652

(404) 454-0870

Alexandria.Brock108@gmail.com